IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

STATE V. YOUNIC

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,
V.
KARIBINO J. YOUNIC, APPELLANT.

Filed February 18, 2014.    No. A-12-959.

Appeal from the District Court for Lancaster County: JODI NELSON, Judge. Affirmed.

Jonathan Braaten, of Anderson, Creager & Wittstruck, P.C., L.L.O., for appellant.

Jon Bruning, Attorney General, and Melissa R. Vincent for appellee.

IRWIN, MOORE, and BISHOP, Judges.

MOORE, Judge.

INTRODUCTION

Karibino J. Younic was convicted in the district court for Lancaster County following a jury trial for driving under the influence of alcohol, third offense, with refusal to submit to a chemical test, and for driving during revocation, second offense. On appeal, Younic assigns that the district court erred in overruling his motion to suppress evidence indicating that he refused to submit to a chemical test. Younic also asserts that the evidence was insufficient to sustain a conviction for driving under the influence of alcohol, third offense, with refusal to submit to a chemical test, and that he received ineffective assistance of counsel. For the reasons set forth herein, we affirm.

BACKGROUND

On March 9, 2012, Younic was charged by information with driving under the influence of alcohol, third offense, with refusal to submit to a chemical test, pursuant to Neb. Rev. Stat. §§ 60-6,196 (Reissue 2010) and 60-6,197.03(6) (Cum. Supp. 2012), and with driving during revocation, second offense, pursuant to Neb. Rev. Stat. § 60-4,108(1)(b) (Reissue 2010). On

- 1 -

May 17, Younic filed a motion to suppress/motion in limine seeking to bar the admission of any evidence indicating that he refused to submit to a chemical test for the reason that he "was not meaningfully advised that refusal to submit to such test is a separate crime." A hearing was held on this motion on June 29 and July 3 and 6. Younic filed a motion to suppress statements on July 16, which was heard by the court on July 17. The order overruling Younic's suppression motions was signed on September 10, but not file stamped until October 10. A jury trial was held on October 9 through 11.

The evidence presented at the suppression hearings and at trial shows that at approximately 3:57 a.m. on January 1, 2012, Lincoln police officer Kenneth Morrow observed Younic driving over curbs and through grass. Upon Morrow's stopping Younic, Younic stated that he did not have a license because it had been revoked. Morrow detected the odor of alcohol coming from Younic and observed that his speech was slurred and that he had red, watery eyes. Younic admitted that he "ha[d] drink." Upon exiting the vehicle, Younic was very unsteady, and Morrow was unable to conduct field sobriety tests. Younic was placed in the patrol car, and Morrow read the preliminary breath test advisement form to Younic, who also read it and then signed it. During the 15-minute observation period, Morrow and Younic engaged in conversation regarding various topics. Younic failed to provide a sufficient sample of his breath, but ultimately, a sample was obtained which disclosed the presence of alcohol.

Younic was placed under arrest and taken to the jail by Officer Jason Wesch. Younic was uncooperative with jail staff and was placed in a jail cell. Wesch thereafter read Younic the postarrest chemical test advisement form verbatim from outside the door of the cell and asked him to sign it. Younic did not respond to Wesch and remained seated on the floor of the cell. When Wesch asked Younic to come out of the cell to take the test, Younic responded by stating, "[f]uck that, none of that test, kill me," which response was construed by Wesch to be a refusal. The postarrest chemical test advisement form was received in evidence, which states that refusal to submit is a separate crime for which a defendant could be charged.

According to Morrow and Wesch, Younic spoke with them in English and responded appropriately, he did not appear confused, and he did not indicate he did not understand what was going on. Younic did not request an interpreter during the police encounter. Younic presented evidence at the suppression hearing that English is not his primary language; rather it is Dinka. Younic has a high school education, attended high school in Kenya, and learned English at school in Kenya, but he maintains that he did not understand legal terms in English. He was provided an interpreter during court proceedings.

The parties stipulated at trial that on January 1, 2012, Younic was under a court order not to operate a motor vehicle for any purpose and that his license was revoked and was not eligible to be reinstated until April 28, 2012.

The jury verdicts found Younic guilty of both charges, and following an enhancement hearing, the district court found that Younic had two prior driving under the influence convictions and one prior driving during revocation conviction for purposes of enhancement. Younic thereafter was sentenced to 365 days in jail with a 15-year license suspension for the driving under the influence conviction and to 180 days in jail with a 2-year license revocation for the driving during revocation conviction, with the jail sentences to run consecutively while the

license suspensions were to run concurrently. Younic was given 284 days' credit for time served. Younic filed this timely appeal.

## ASSIGNMENTS OF ERROR

Younic assigns as error that the district court erred in denying his motion to suppress evidence and that the evidence was insufficient to support his conviction for driving under the influence, with refusal to submit to a chemical test. Younic also asserts that he received ineffective assistance from his trial counsel.

## STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress evidence based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. *State v. Smith*, 286 Neb. 856, 839 N.W.2d 333 (2013); *State v. Casillas*, 279 Neb. 820, 782 N.W.2d 882 (2010). Regarding historical facts, an appellate court reviews the trial court's findings for clear error. *Id.* But whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination. *Id.*

In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Elseman*, 287 Neb. 134, ___ N.W.2d ___ (2014); *State v. Watson*, 285 Neb. 497, 827 N.W.2d 507 (2013). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

Claims of ineffective assistance of counsel raised for the first time on direct appeal do not require dismissal ipso facto; the determining factor is whether the record is sufficient to adequately review the question. *State v. Seberger*, 279 Neb. 576, 779 N.W.2d 362 (2010).

## ANALYSIS

### 1. DENIAL OF MOTION TO SUPPRESS

Younic's first assignment of error is that the district court erred in denying his motion to suppress evidence. Younic asserts that he was not meaningfully advised that refusal to submit to a chemical test was a separate crime for which he could be charged as required by Neb. Rev. Stat. § 60-6,197(5) (Cum. Supp. 2012). In support of this argument, Younic points to his language barrier and the significant nature of the possible criminal charges, arguing that "more needed to be done by law enforcement to ensure that [he] understood the gravity of the situation and understood in a language that was familiar to him." Brief for appellant at 11. Younic cites to *Martinez v. Peterson*, 212 Neb. 168, 322 N.W.2d 386 (1982), for the proposition that a defendant who does not understand English could not be found to have understood a request to submit to a chemical test and therefore could not be convicted of a refusal. In response, the State argues that the determination of whether Younic was properly advised is a factual one which the trial court resolved against him.

Section 60-6,197(5) provides:

Any person who is required to submit to a chemical blood, breath, or urine test or tests pursuant to this section shall be advised that refusal to submit to such test or tests is a separate crime for which the person may be charged. Failure to provide such advisement shall not affect the admissibility of the chemical test result in any legal proceedings. However, failure to provide such advisement shall negate the state's ability to bring any criminal charges against a refusing party pursuant to this section.

An arrested motorist refuses to submit to a chemical test to detect intoxication when the motorist's conduct, demonstrated under the circumstances confronting the officer requesting the chemical test, justifies a reasonable person's belief that the motorist understood the officer's request for a test and manifested an unwillingness to submit to the requested test. *Betterman v. Department of Motor Vehicles*, 273 Neb. 178, 729 N.W.2d 570 (2007).

In *Martinez v. Peterson, supra*, relied upon by Younic, the district court reversed and set aside an order by the Director of Motor Vehicles revoking the operator's license of Jose R. Martinez. At trial before the district court, Martinez presented evidence that he was born and raised in Mexico and that he could not read English or understand the English language, except for simple statements spoken slowly. He further testified that he quit school at the age of 10 just after finishing his elementary education in Mexico. Martinez testified, through an interpreter, that he did not understand that the police officers were asking him to give a blood or urine test and that he did not understand that giving the test was necessary in order to keep his driver's license. He also testified that he did not refuse anything that he understood the officers were asking him to do.

Following an appeal by the Director of Motor Vehicles, the Nebraska Supreme Court noted:

To constitute a refusal to submit to a chemical test required under the implied consent statute, the only understanding required by the licensee is an understanding that he has been asked to take a test. There is no defense to refusal that he does not understand the consequences of refusal or is not able to make a reasonable judgment as to what course of action to take.

*Martinez v. Peterson*, 212 Neb. 168, 171, 322 N.W.2d 386, 388 (1982).

The court went on to note that the evidence was in conflict as to whether or not Martinez understood that he was being asked to submit to a test of his blood or urine. The Supreme Court, after considering and giving weight to the fact that the district court had the opportunity to see and hear the witnesses, affirmed the district court's conclusion that Martinez did not understand that he was being asked to submit to a test or the consequences of refusing to submit to the test.

The facts in the instant case are distinguishable from *Martinez*. Younic learned English while in school in Africa. He conversed with Morrow at some length in English and made appropriate responses in English. Younic never indicated to either Morrow or Wesch that he did not understand what was being asked of him. His response to Wesch's request to take the chemical test was made in English, including a well-known English expletive.

In its written order overruling the motion to suppress, the district court found that Younic had been provided the requisite advisement regarding the chemical test, that Younic was fully

advised of the consequences of failing to give the test, and that he made clear his intent not to take the test. In reaching these conclusions, the court specifically found that the testimony of Morrow and Wesch was credible and that Younic's testimony was generally not credible. As the Supreme Court did in *Martinez v. Peterson, supra*, we give weight to the fact that the district court saw and heard the witnesses and accepted one version of the facts rather than the other.

We conclude that the district court did not err in denying the motion to suppress the evidence concerning Younic's refusal to submit to the chemical test. There was ample evidence to support the court's findings that Younic was properly advised as required by § 60-6,197(5). This assignment of error is without merit.

## 2. SUFFICIENCY OF EVIDENCE

Younic next asserts that the evidence was insufficient to support his conviction for refusal to submit to a chemical test, again pointing to the language barrier as indicative of his lack of understanding regarding the request to submit to such test. The State asserts that the evidence shows that Younic both understood he was being asked to take a test and manifested an unwillingness to take it. One of the elements of proving a refusal to submit under § 60-6,197(5) is that the person arrested for driving under the influence must be advised that refusal to submit to a chemical test is a separate crime for which the person may be charged. *State v. Turner*, 263 Neb. 896, 644 N.W.2d 147 (2002).

The evidence was clearly sufficient in this case to show that Younic was read the postarrest chemical test advisement form, which included the recitation that refusal to submit is a separate crime for which he could be charged. The evidence is also clearly sufficient to show that Younic in fact refused to submit by virtue of his response to Wesch's request that Younic take the test. This assignment of error is without merit.

## 3. INEFFECTIVE ASSISTANCE OF COUNSEL

Younic's final assignment of error is that he was denied effective assistance of counsel because his trial counsel failed to conduct depositions, failed to advise Younic to proceed to trial in these matters, and failed to obtain reduced sentences. He asserts that many of these areas do not appear in the record, but that he is attempting to preserve his right to a postconviction proceeding. Claims of ineffective assistance of counsel raised for the first time on direct appeal do not require dismissal ipso facto; the determining factor is whether the record is sufficient to adequately review the question. *State v. Seberger*, 279 Neb. 576, 779 N.W.2d 362 (2010).

We find Younic's second claim--that counsel failed to advise Younic to proceed to trial--is without merit, because clearly Younic did in fact proceed to trial on both charges. We agree that the record is insufficient to address the remaining claims of ineffective assistance of counsel.

## CONCLUSION

The district court did not err in denying Younic's motion to suppress evidence of his refusal to submit to a chemical test. The evidence is sufficient to sustain Younic's conviction for driving under the influence of alcohol, third offense, with refusal to submit to a chemical test. The record is insufficient to address Younic's claims of ineffective assistance of counsel, with

the exception of the claim that counsel failed to advise Younic to proceed to trial, which claim is without merit.

AFFIRMED.